OPINION OF THE COURT
Frederic E. Hammer, J.
Defendant Anker Lumber, Inc., moves for an order vacating the statement of readiness and striking this action from the Trial Calendar. A motion is brought by defendant Specialty Chemicals Co. seeking similar relief.
The motions are predicated upon the refusal of plaintiff Mary Murray to submit to a psychiatric examination at the office of a doctor unless her attorney is permitted to sit in at the examination, and upon failure to furnish other items of discovery.
CPLR 3121 states:
"(a) Notice of examination. After commencement of an action in which the mental or physical condition * * * is in controversy, any party may serve notice on another party to submit to a physical, mental or blood examination * * *.
"(b) Copy of report. A copy of a detailed written report of the examining physician setting out his findings and conclusions shall be delivered by the party seeking the examination to any party requesting to exchange therefor a copy of each report in his control of an examination made with respect to the mental or physical condition in controversy.”
"The general trend of the practice in personal injury cases is to attempt to narrow down the areas of medical dispute, and the aim is, ultimately, with the assistance of the medical profession, to eliminate most of the controversy on the medical side of personal injury cases.” (Del Ra v Vaughan, 2 AD2d 156, 157.)
The plaintiff herein has not refused to permit the psychiatric examination. However, the parties have been unable to agree as to the parameters of the examination. The moving defendants seek to exclude legal representation during the course of the examination. Plaintiff takes the position that she is entitled to legal representation before, during and immediately following the psychiatric examination.
CPLR 3103 (subd [a]) states: "The court may at any time on its own initiative, or on motion of any party or witness, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device.”
*660 "Special protection was given to women by section 306 of the Civil Practice Act in 'clear and unmistakable’ terms. The woman could insist on being examined 'in the presence of her own personal physician and such relative or other person as the court may direct.’ * * * There is, in any event, good ground for a party’s insisting that his doctor or attorney be present at the examination apart from questions of modesty. The information so obtained about the way the examination was conducted may he helpful on cross-examination. The practice reduces the possibility of misleading medical reports.” (3 Weinstein-Korn-Miller, NY Civ Prac, par 3121.07; [emphasis supplied].)
In a California action (Gonzi v Superior Ct. of City & County of San Francisco, 51 Cal 2d 586, 589), the court stated: "We held that since the court could order a plaintiff in a personal injury action to undergo a physical examination by the defendant’s doctor (Johnson v. Southern Pac. Co., 150 Cal. 535 [89 P. 348, 11 Ann. Cas. 841] the plaintiff should be permitted 'to have the assistance and protection of an attorney during the examination.’ We said in the Sharff case that 'Whenever a doctor selected by the defendant conducts a physical examination of the plaintiff, there is a possibility that improper questions may be asked, and a lay person should not be expected to evaluate the propriety of every question at his peril.’ ”
In a similar dispute in Milam v Mitchell (51 Misc 2d 948, 950), the court stated: "The principal objections by the defendants’ psychiatrist to having the reporter present are that the presence of a third party would tend to interfere with the proper conduct of the examination and that he would be unable to record every question and answer and would be at a disadvantage in drawing his report.”
The court grants defendants’ motions to examine the plaintiff upon condition, however, that plaintiff be permitted to have a stenographic reporter present at the psychiatric examination. It is directed that the reporter be stationed outside of the examining room, or in such a position so as not to interfere with the proper conduct of the examination. Plaintiff is directed to supply defendants’ psychiatrist with a copy of the transcript as soon as possible to assist the psychiatrist in drawing his report. With regard to appearance, emotional reaction and other observations that cannot be reflected properly by questions and answers, the court believes that same *661 can be properly explained by the psychiatrist, and the transcript would be of assistance.
In determining the other issues in these motions, plaintiffs are directed to furnish to defendants written authorizations permitting defendants to obtain all medical, hospital and autopsy reports within 10 days after service of a copy of the order entered hereon.
Plaintiffs are further directed to comply with the demand for witnesses of defendant Anker Lumber, Inc., dated August 17, 1977, within 10 days after service of a copy of the order entered hereon.
Defendant Specialty Chemicals Co. is directed to produce Mr. Perkins and Mr. Boak at Special Term, Part 2, on the fifth floor of this courthouse, on August 27, 1979, at 10:00 a.m., for examination before trial. Said examinations shall be completed no later than September 10, 1979.
Under the conditions hereinabove stated, plaintiff Mary Murray is directed to submit to a psychiatric examination at the office of Dr. Seymour Berg within 30 days after service of a copy of the order entered hereon. Plaintiff shall be permitted to have a transcript made of the examination and shall furnish a copy to all defendants. Plaintiff’s right to move to strike any question or answer at the psychiatric examination is reserved for the trial of this action and the failure to object to any question or move to strike testimony shall not be a bar or waiver to so moving upon the trial of the action. The psychiatric examination shall not be interrupted by any objections during the course thereof.
In all other respects the motions are denied.