**BETTY SLOAN, Plaintiff**
**v.**
**COST-U-LESS, INC., Defendant**

Civil No. 754/1994

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

August 1, 2001

DENISE FRANCOIS, ESQ., Law Offices of Hodge & Francois, St. Thomas, Virgin Islands, *Attorney for Plaintiff*

EDGAR A. CHRISTENSEN, ESQ., Law Offices of R. Eric Moore, St. Croix, Virgin Islands, *Attorney for Defendant*

HODGE, *Judge*

## MEMORANDUM OPINION

(August 1, 2001)

Before the Court are Defendant Cost-U-Less, Inc.'s Motion to Allow Independent Medical Examinations, pursuant to Rule 35 of the Federal Rules of Civil Procedure, and Plaintiff's Motion for a Protective Order. Defendant seeks an order permitting three additional independent medical examinations of the plaintiff in this personal injury action. For the reasons set forth more fully below, each motion shall be granted in part.

## FACTS

Plaintiff Sloan alleges that on February 6, 1994, she was shopping at a Cost-U-Less store located in St. Thomas, Virgin Islands, when she reached for a two-jar pack of mayonnaise, and was struck on her head when another two-jar pack fell from a higher shelf. As a result, Plaintiff alleges that she was rendered unconscious, and that she injured her head and neck.

## DISCUSSION

Rule 35 of the Federal Rules of Civil Procedure, applicable to this Court pursuant to Rule 39 of the Rules of the Territorial Court, provides that when the physical condition of a person is in controversy, the court may, in its sound discretion, order the party to submit to examination upon a showing of good cause. FED. R. CIV. P. 35. A person who alleges a mental or physical injury places their condition in controversy. Thus, the rule reflects a determination that the interests of truth and justice justify the privacy invasion involved in such an examination. Wright, Miller & Marcus, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2231 (1994).

██ The court may order an examination under Rule 35 even when, as here, the plaintiff has already had one examination, although a stronger showing of necessity may be required for repeat examinations. *McKitis v. Defazio*, 187 F.R.D. 225 (D.C. Md. 1999); Wright, at § 2234. Because such an order may be made only on motion, it is incumbent upon the party seeking the order to provide necessary information to the court, *i.e.* the names of physicians and the type of examinations sought. Rule 26(c) governing protective orders also permits the court to include appropriate protective measures when necessary. FED. R. CIV. P. 26(c).

### 1. Psychological and Exam and Psychological Tests

Defendant seeks an order directing plaintiff to submit to an examination by a team of psychological experts. When a plaintiff puts her emotional condition in issue, the defendant is entitled to a mental examination. *See Bruce v. Bruce*, 17 V.I. 37 (Terr. Ct. 1980). Rule 35 expressly provides for examination by licensed or certified psychologists. Rule 35(a) & (c). Although Plaintiff does not oppose an examination by a psychologist, psychiatrist or neuropsychologist, she

does object to being examined by all three, to having to submit to unidentified tests, and to any examination in excess of three hours.

■ Because Defendant has provided the Court with a list of psychological tests which may be administered during the examination, Plaintiff has had the opportunity to contest those tests that she feels are irrelevant to this litigation. Plaintiff has not suggested that any of the proposed tests are inappropriate. For this reason, although Defendant's motion shall be GRANTED with respect to permitting the psychological testing, the examining psychologists shall be limited to administering those tests specifically identified. In addition, the plaintiff has requested copies of any raw data obtained pursuant to Rule 35(b)(1). Therefore, because the plaintiff must be provided with a copy of the expert's written report, including the results of any tests which were administered, diagnoses, and conclusions, Defendant shall provide such data to the plaintiff. *See Hirschheimer v. Associated Minerals & Minerals, Corp.*, 1995 WL 736901 (S.D.N.Y.).

■ In addition, while Plaintiff has agreed to one examination by a psychiatrist or a psychologist, Defendants seek to have Plaintiff examined by a "team" of experts over a period of three days, or eighteen hours.[1] This is clearly unreasonable given the facts and subject matter of this case. While the Defendant argues that his team of experts cannot produce reliable results if the examination period is any less, the Court notes that a party seeking an examination does not have the absolute right to examination by the physician of his choice. Thus, although the Court will permit some examination into the plaintiff's mental health, such examination shall be limited to two ninety-minute periods.

## 2. Endocrinologist

■ Further, Defendant seeks to have Plaintiff examined by an endocrinologist in order to substantiate the theory that Plaintiff suffers from a form of hyperthyroidism, which is associated with dizziness and,

---

[1] Sometimes more than one expert is needed in a particular field, however, the Court is unaware, and Defendant has cited no case which permitted such extensive testing by so many experts over a period of three days. For example, one court found that two mental health specialists were required—a psychiatrist and a neuro-psychologist—in the case involving extraordinarily complex mental injuries resulting from a sexual assault. *Peters v. Nelson*, 153 F.R.D. 635 (D.C. Iowa 1994).

possibly, falls. Although at least one court has refused to order examination by more than one doctor, "such limitation is wholly inconsistent with the realities and complexities of modern medical practice. Where specialists from various branches of medicine are required, there is nothing in Rule 35 to prevent the court from ordering examination by all of them." Wright, at § 2234.2; *see also Sauer v. Burlington Northern R.R.*, 169 F.R.D. 120 (D.C. Minn. 1996) (orthopedic examination required of plaintiff who had been examined by neurologist).

■ Plaintiff urges the Court to prohibit any blood tests during her medical examination because, she argues, such tests are irrelevant to her alleged injuries. She explains that only the condition of her blood at the time of her accident, *i.e.*, six years ago, is relevant. Apparently, this argument anticipates the Defendant's theory that Plaintiff suffered from Graves' disease, a form of hyperthyroidism, and that it was the disease that caused Plaintiff's accident in the store. On the other hand, Defendant maintains that, where the conditions of Rule 35 are satisfied, the Court should order an examination which will likely include ordinary blood work. Further, Defendant correctly points out that Rule 35(a) specifically authorizes blood tests. This is because blood and urine tests are so common that they go hand in hand with the very notion of a medical examination. *Breithaupt v. Abram*, 77 S. Ct. 408, 352 U.S. 432, 1 L. Ed. 2d 448 (1957). Therefore, Defendant's motion shall be GRANTED with respect to this issue and an endocrinologist may examine Plaintiff for no more than 90 minutes and may obtain blood and urine samples in his discretion.

### 3. Vocational Rehabilitationist

Finally, Defendant wishes to have Plaintiff examined by a vocational rehabilitationist. While Plaintiff does not object to this examination, she objects insofar as the expert seeks to have the examination tape-recorded or transcribed. Recordation may affect the examination—by making the atmosphere more hostile or adversarial—so the party wishing to record the examination should offer compelling reasons for deviating from the standard practice. Only then will the Court determine whether there is cause to allow the recordation. *See Briglia v. Exxon, Co.*, 310 N.J. Super. 498, 708 A.2d 1246 (N.J. Super. 1997).

In this case, it is the doctor himself who wishes to record the examination. The Defendant has offered a letter, which explains that it is

Dr. Williams' practice to record IMEs. *See* Motion for Protective Order, Exhibit 2 (Letter of February 17, 2000). One could, therefore, conclude that the doctor does not feel that the recording will interfere with his work. Ordinarily, where the Court has concluded that the "manner of examination has scientific reliability" the court should not "intrude on the expertise of the examiner in deciding how to administer the exam". Wright, at § 2236. However, the doctor makes his motivation sufficiently clear. The doctor "has indicated that it is his practice lately to have a court reporter given the propensity of some Virgin Islands attorneys and their clients in some cases to claim that his notes or recollections are inaccurate, or worse." Motion for Protective Order at 3. This concern is of no merit and merely suggests that the doctor is uncomfortable with the adversarial nature of the litigation process.

██ Additionally, doctor's concern appears to be irrelevant to his *medical* examination and seems tailored to suit his anticipated courtroom testimony. Alternatively, the comment could be interpreted as being discriminatory in nature, or even insulting to certain members of the Bar. Either way, such a concern of a non-party is irrelevant and will not be entertained by this Court; and Defendant's Motion shall be DENIED with respect to the recordation issue. Further, Plaintiff has shown good cause for restricting the examination time to 3 hours, including the administration of any tests.